Case number 20-3064, United States of America v. David M. Long, also known as Damo Appellant. Mr. Talai for the appellant, Mr. Hobell for the appellate. Mr. Talai. Good morning, and may it please the court. Andrew Talai on behalf of defendant and appellant, David M. Long. I'd like to reserve two minutes for rebuttal. I'd like to start with two brief updates for the court, and then I'll turn to the interpretation issue, followed by the district court's clearly erroneous, dangerous misfinding. Is this, are these updates beyond the 20HA letters? Yes, your honor. Okay. Just yesterday, the Fifth Circuit Court of Appeals held in a case called Shikambi, which is available at 2021 Westlaw, 129-169 in a published opinion, that sentencing guidelines section 1B1.13 does not apply to defendant filed motions. This is in addition to the 10th Circuit's decision in McGee, which was in our 20HA letter, and now brings the tally up to six courts of appeals that have held in published opinions that 1B1.13 does not apply under the plain language. Now, the second issue I'd just like to raise briefly is an update to the statistics that were provided in our brief. I think this is important just because it underlines the uniqueness of the current age we're living in. Now, there have been 3,247 grants of sentence reductions or compassionate release applications since the First Step Act. In addition, due to COVID-19, 20 inmates at the Springfield facility where Mr. Long is located have died. That's 8.69% of all deaths in the federal system, and it's the highest number of any federal prison. Mr. Tilley, you're two minutes into just 10 minutes, so let me just ask you something. You just said that all these courts have decided 1B1.13 does not apply. That seems pretty self-evident. But counsel in the district court, was that you, Mr. Tilley, said, USSG section 1B1.13 applies to motions for reduction of sentences filed pursuant to 18 U.S.C. C1A. Right? Yes, Your Honor, that was not me. You put the wrong law in front of the judge. You realize that later on. Is that fair enough? Well, no, Your Honor. That is an accurate assessment of the proceedings, but just to be clear, that was not my firm. We were appointed as pro bono appellate counsel by this court. Well, that's good. So is it not for the case? Counsel put the wrong law in front of the judge, got a judgment based on the wrong law. Well, so this goes, Your Honor, this goes to the government's argument of invited error. And for two reasons, I think at most what we can say here is that sentencing counsel acquiesced in the error, but he didn't waive the issue, and Mr. Long is not prohibited. I wouldn't suggest it's waived. Well, maybe I would, but my point is this. We're in a bit of a box, it seems to me, a bind, I guess I should say. If, now there are some cases that say, well, if it wasn't really strategic, and obviously it wasn't, then it's just a mistake, not an invited error. If we go down the mistake route, our review is for plain error, right? Aside from the difficulty of saying the judge made a plain error under the circumstances we've just agreed occurred, plain error would require, I believe I've got this right, that this would show a reasonable probability that but for the error, the outcome of the proceeding would have been different. All true? Well, I believe Mr. Long would prevail even under the plain error standard, Your Honor. And the standard is reasonable likelihood, and that comes from this court's decision in Saro. And just to put it in context, that's not the same standard as cause and prejudice in the habeas context. And it's not even really the same standard that applies to a Strickland claim. It's something less than that. So this court has explained in Saro that the interest in finality is lessened in the sentencing context. The same was said in Molina-Martinez by the U.S. Supreme Court. It's from Molina-Martinez that I quoted to say a reasonable probability is a reasonable likelihood. I think they're the same. So we know the judge's view on dangerousness, right? And if he goes through the exercise that based on the correct law, dangerousness would be a fact, correct? Well, not under the guidelines, Your Honor. The interest in protecting the public- Not under 3553, is that wrong? Well, it's a different standard, Your Honor. They go to similar concepts. Under the 3553A factors, the standard is they need to protect the public from future crimes. Under the guidelines, it's a somewhat different standard that comes from the pretrial detention statute. So they're not actually the same standard, but in any event, Mr. Long would argue that there was a significant procedural error in this case. So it's, yes, the district court clearly erred in finding dangerousness, but the district court also applied the wrong standard entirely. With erring in finding dangerousness? We've been discussing the law rather than the facts here, right? Until just now when you said that. Yes, I- Did you mean erring in even talking about dangerousness or something like that? Well, I wouldn't say erring in just talking about it, but I would say that there are two bases for finding that the error here was not harmless. So the first being a legal matter, procedural matter, and the second being a substantive matter of termination on the merits was incorrect. Well, if it was a mistake, right, we'd have to find that his substantial rights were infringed, correct? Yes, Your Honor. So when we get to, if we do that, will the district judge not be looking at, he already assumed compelling circumstances when he made the ruling. So if we go back and he said, I either assume or I actually find compelling circumstances, but also says in the proper terms for 3553, essentially what he has said about dangerousness to the community, we're not going anywhere, right? Mr. Long, I guess he's not going anywhere. No, Your Honor, I don't think that's correct. And part of the reason is that the district court in the hypothetical we're thinking about here, I think it would be an abuse of discretion if the district court were applying the correct standard. So assuming that 1B1.13 did not apply, and rather than considering all of the 3553A factors and balancing them, the court simply said, well, I think there's a dangerousness problem here and gave no further reasons. That would be an abuse of discretion. The same judge dealt with Long's co-defendant, correct? And four months later in another compassionate release case. Yes, Your Honor. And actually distinguished the Long situation while he was applying the correct law in the co-defendant's case. I don't know if it was exactly correct, but it was a much better analysis. And I think it's certainly worth a read, a very thorough and thoughtful opinion. Although I think the distinctions that the district court made with respect to Mr. Long's case fall flat. So Mr. Talai, I gather you're making a separate clearly erroneous argument about the determination of dangerousness. And I understand your legal point that it was packaged wrong because it was following as if the guideline applied, assuming that we get past the invited error obstacle and we're looking at this. Tell us about your more record-based clearly erroneous analysis. You hinted that it had in part to do with that the district judge did not do the full 3553 balancing. So lead us through your factual analysis. Yes, Your Honor. I just wanted to note that I've crossed into my rebuttal time. Okay, go ahead. Thank you, Your Honor. So yes, we have a separate factual-based argument. I think the two things to focus on are the clear disparities in the outcomes here between Mr. Long and Mr. Douglas. Their similarities are remarkable from the underlying conditions to the underlying crimes to the extremely severe criminal history, even to the length of the sentence that they had served, 41% in both cases with respect to the Morrissey murder. The clean record, disciplinary record, the pursuit of rehabilitative programs and education, the ties to a law-abiding family in the community and a support network. And these are all things that the district court simply ignored in its order. It ignored the role, for example, of the probation office in ensuring that Mr. Long stays out of trouble. It ignored that the risk of recidivism reduces with defendant's age. It actually clearly aired, and I don't think there's really a dispute here, in respect to assessing Mr. Long's coursework. And as I mentioned, a lot of that was designed towards rehabilitation. I mean, he took a class on how to learn Excel. He was taking writing courses. It's very clear if the evidence was correctly assessed, it would have painted a different picture of Mr. Long's efforts to rehabilitate over 10 years in prison. In addition, we would argue that the district court gave short shrift to the lack of disciplinary violations. Can I ask, I'm sorry, are you done, Judge Fuller? Are you done, Judge Fuller? Yeah, I'm finished. You're done, okay. I just had, sorry, did you have a question, Doug? Go ahead, I had one, but you go ahead. Nope, all right, on the plain error standard, the substantial rights prong, because the district court felt compelled to address the dangerousness findings, felt required to do that. He never got to exercising his sort of balancing discretion under 3553. So the discretionary judgment that you say should have applied here, given the assumption of extraordinary and compelling circumstances was never made. Do you have a good case for the proposition that the failure to afford a disciplinary judgment for a defendant or here, a prisoner, an exercise of discretion required by law is itself a deprivation of substantial rights, or do we have to sort of prognosticate how we think that discretionary exercise would come out when the district court never did it in the first place? Right, well, so thank you, Your Honor. The first thing I would mention is in Molina-Martinez, which is an analogous context and did involve plain error. The Supreme Court said that where the district court is silent or the record is silent, it's very hard to determine whether there was prejudice or not. And in that case, the court did seem to indicate that there would have been a deprivation of substantial rights. In addition, I would point, Your Honor, to this court's cases in Smith and White, which were not in the context of plain error, but in both circumstances, the court explained that a failure to consider all of the 3553A factors as relevant was a clear abuse of discretion and remanded for the district court to conduct that inquiry. And I think even in Molina-Martinez, the Supreme Court explained that where the record is silent, there's always an option for a limited remand for the district court to conduct the analysis in the first instance. So to the extent the court is concerned about that issue, the availability to send it back to the district court is there. And I don't think it would, in addition, I don't think it would undermine the interest in finality, because again, we're not even in the context of a resentencing, a plenary resentencing. We're in the context of a sentence modification proceeding, which the Supreme Court in Dillon explained is an exception to the general rule of finality. My colleagues have any more questions? Here. All right. Thank you very much, Mr. Talai. We'll hear from the government now. Thank you. Mark Hobel for the United States. David Wong is a danger to the community. At the age of 34, he paid tens of thousands of dollars to have three men killed in a murder for hire scheme to further his drug trafficking enterprise. His co-defendant, Reginald Douglas, didn't do that. And this is on top of the kidnapping and murder of Anthony Morrissey 17 years before. Okay, can I ask you about your invited error argument? This strikes me as a little unusual. Usually invited error isn't just one sentence in the standard section of a brief. That usually means someone has advocated to the court and argued to the court for adopting a proposition and put aside this strategic factor. But you see affirmative argument in an effort to persuade the court to adopt a position, which the government did in this case as to the dangerousness finding. But Long's counsel did not. There was sort of that one background standard reference and then never mentioned again. What is your best case for the proposition that something like that, where there's no argument to the district court, is just laid out as a background in this? It's relevant, it's the standard, legal standard in the case. But then there's no argument of that standard. Supports an invited error ruling. Right, so I think Driscoll and jury instructions in requesting a statement of law, but I recognize that we're- I'm sorry, so, but in jury instruction cases, there's usually some argument about, this is what the right jury instruction should be and we think you should adopt it. Right, and this is all- There's nothing like that in this brief. Right, and this is all on the papers. And I understand we invited error, asked the court to just consider this waived. And if the court's not inclined to do that, we've made our argument about that. Yeah, I'm asking you your argument. And it's an unusual one for me to see the government, when itself was the one that actually affirmatively argued for the standard to sort of hoist it as an invited error on the defendants. So I thought for sure the government would have had some kind of on-point case to support that. That's correct. I mean, I think we're analogizing this to jury instructions. And there was some strategic advantage in being able to say, my point to the sentencing guidelines, the statement and say my medical condition, is an extraordinary and compelling reason. That's right there. But I recognize there was an extensive argument on this. And the government of course did make arguments on both this policy statement and the 3553A factors. I think if you look at the government's brief, it's all kind of rolled in together there. But on the substantial rights prong of plain error review, what Mr. Long has to show is that this, if there was a legal error here, and there's an absolutely clear legal error here, he has to show that this had some reasonable likelihood that this impacted the substantive outcome. It's not enough- I just wanna be crystal clear. You agree that there was plain error here in applying this guideline? I don't agree. I realized that- I misunderstood what you said. In the sense of error that was plain without the other factors, it was clearly wrong as a legal matter. No, no, no. We don't agree. I thought you said that too. I thought you said that too. No, no, no. I'm sorry if I, we don't agree with that. We realized that we've gone, it sounds like, I wasn't aware of the Fifth Circuit case, but it sounds like we've gone zero and six in other circuits on the legal argument here. What could even be the argument that it's not wrong? Well, we've made the argument in our brief and I'd say, I think it's, from a plain error perspective, the issue here really is what difference does this make? But that's not the error that is plain. That's substantial rights. And that's where I thought you were focusing. That's why I thought you went right over whether it was actually wrong because it does seem, in a case in which it affects substantial rights, I can't really see the point that it's not wrong. Right. I think this case could be decided. I think the district court should be affirmed on the third and fourth prongs of plain error review. I think that's stronger for the government certainly here, which is why I'm focusing on it. But we don't agree that there was absolutely clear legal error, but we realized that those are arguments the courts have not accepted. So, and I'm prepared to answer questions about that, but from the government's perspective, the issue here is, is it really plain error for a district court to look at a defendant like Mr. Long, who's committed two murders, two attempted murders, find that he is a danger to the community right now, that if he was released on capacity, if he was compassionately released right now, he would pose a danger to the community and deny that. Is that plain error? When the district court could have and would have made the same determination under the 3553A factors. Well, that's where Mr. Tlai is, I think maybe on his strongest ground in saying, why should we second guess the discretion in all the factors of the 3553 inquiry when the district judge for understandable reasons didn't even go there? So what's your response on that? That the district court essentially did what 3553A requires it to do. It balanced the factors, the mitigating factors that David Long put in front of the court, his physical condition, his record- I think he discussed those in terms, but only in terms of that didn't dissipate his sense of his dangerousness determination, but it seems pretty common in the court when a district court judge makes a ruling, let's assume for purposes of this question that we decided it was plain error. And that ruling is, I have no discretion, I must address this. And if I find this, I have no discretion to balance anything else because that's what the old guideline provided. And so we never got around to exercising that discretion. Do you have a case where the court has said, well, we'll decide how we think that the exercise of discretion would have gone? Right, so I think that the closest analogized case that I could find, and unfortunately we did not cite this in our brief. So I'm happy to, it's United States v. MAC, 841F3514 from this court. And that was a case where it's sentencing the district, there was a sentence manipulation argument that the defendant had made in his briefs. The district court did not address it. The defense counsel did not object at sentencing. And this court found there was no plain error in this procedural issue of not addressing this argument because in an earlier motion to dismiss on kind of entrapment grounds, the district court had denied that motion to dismiss the indictment. And the court said, you know, it's basically the same argument. It's basically the same analysis, just presented at a different procedural stage. That's not plain error because he hasn't shown that- Okay, now I understand that point, but that's why my question here is, is it the same question when you think you have no discretion and when you do have discretion? And I thought normally, because I think you agree with the standard of review being abuse of discretion review here. And if they didn't ever exercise that discretion in the way that the law entitled Mr. Long to have it exercised, that's, I'm not sure that is the same thing. Right. It's not that he couldn't come to the same result. You know, the record is what it is and it will get balanced the way it gets balanced. But I'm more concerned about the absence from the district court of any balancing or discretionary judgment that the law seems to entitle. Sure. So two responses to that. First, it's a procedural right to have that balancing done. And what the defendant- What do you mean by procedural? I don't know whether to call it procedural or substantive. It seems a substantive right to have a district court judge exercise discretion. I don't know whether to label that procedural or substantive. We would label it procedural and that the substance is whether he's gonna get compassionate release. The procedure is that the district court has to balance the 35-50- The substance of the outcome. An outcome isn't substantive. This is making the substantive determination of whether he's entitled to compassionate relief. And I don't know, it just strikes me as a little hard to brush off as procedural. You know, if the government went to the district court saying we need a preliminary injunction, here's a showing. And the district court said, I don't think I have any discretion to issue preliminary injunctions. So I'm gonna deny it. I think you would quite clearly say that's more than a procedural error. Right. And I apologize, I'm not a civil lawyer. So I don't know much about procedural or preliminary injunctions, but I may just have to disagree on this and say that from the government's perspective, the substantive outcome- Let me put it in your term. Let's say the government argues for upward departure in sentencing. And the district judge says, I'm sorry, after, you know, I've read the latest spin court case and I think I have no discretion to ever do an upward departure. Would that be a procedural error or a substantive error? I believe that would be a procedural- I think the government would know this. That would be a procedural error, but in order to show a substantive difference, we'd have to show a reasonable likelihood that we actually would have gotten the upward departure. And that's what we're talking about here, is that David Long hasn't shown a reasonable likelihood he actually wouldn't have gotten compassionately released because this district court believes with good reason, he is a danger to the community, could have and would have considered those factors under the 3553 balancing, actually performed a balancing of sorts. If you look at page three of the district court's opinion, the court said, while the court commends Long on these achievements, they do not outweigh the serious criminal conduct for which he was convicted and sentenced. That's basically a balancing of factors just under a different procedural sort of box. And then to top it all off, we have Reginald Douglas's case, where as my opponent has noted, there was a very thorough discussion of the two defendants and explanation of why there was a different outcome. And there, there was some analysis of the 3553 factors. So ultimately the burden to show substantial prejudice to substantial rights is on David Long. And what he has not shown is that given his dangerousness and given that the district court clearly believes he's dangerous, that he would have, there's a reasonable likelihood he would have gained compassionate release if the district court had said, you know what? I'm not bound by the policy state. Okay, thank you. My colleagues have any further questions? So were we to find that this was not invited error? I mean, I hear you relying on Driscoll, but it seems actually quite different from the situation of a jury instruction, because jury instructions have this character of, you know, getting the law correct, but also to some extent, actually getting the parties satisfied. And if a party proffers an instruction, you know, for maybe what are partly atmospheric or strategic reasons, and the district court thinks, well, if I were writing it anew, I wouldn't write that, but I'm gonna accept that instruction because it's gonna obviate a potential, you know, appellate issue. That feels really different from this, which feels to me more like citing a case that's been overruled or citing a wrong case and where we really, you know, we don't see, like let's say the district, the defendant had cited a case or a person seeking compassion and cites a case that's been overruled. We wouldn't allow the district court to say, ah, I'm gonna rely on that and just stop this person from having an appellate issue, right? It's just legal research and it's supposed to, you know, everyone's supposed to get it right. And here, nobody, you know, for some understandable reasons, there isn't a guideline that applies. And so it just feels really different, but I'm wondering really institutionally from your perspective, as the government, if we were to not find this to be invited error, is that really problematic beyond the circumstances of this case? No, I don't think it's problematic from beyond the circumstances of this case. I think it's just that if you, you know, when a party puts a statement of law in the legal standard, that's the law the party wants the court to apply. And if you don't like the law or you think that there's an argument that it doesn't apply, you note that and that didn't happen here. Right, right. And I mean, you know, as I said, I think it's an understandable error for Judge Bates to have made. I think it's an understandable error for counsel for Mr. Long to have made. And now it's very much clearer because the circuits have rallied around and talked about it. Unless the court has any further questions, we would ask that this court affirm the district court. Thank you very much, Mr. Hebel. And Mr. Talai will give you the two minutes you requested for rebuttal. Thank you, your honor. I'll just make a few quick points. First, my friend on the other side tried to draw a distinction between Mr. Douglas and Mr. Long by saying that, or suggesting that Mr. Douglas didn't have serious subsequent criminal history. And that's just not true. Soon after the Morrissey murder, he killed another man and that was the reason that he was sentenced to 25 years to life. As I read it, the distinction that Judge Bates made was that Mr. Douglas did that at age 20 and Mr. Long did that age 34. Yes, your honor, I believe it was age 22 as opposed to age 30, around there, 32 to 34. So yes, later into adulthood. But as we've pointed out in our papers, there are cases where district courts have held that, even defendants who committed crimes well into adulthood were entitled to a compassionate release. So I don't think that can be dispositive. The second point I'd just like to make very quickly is that the government has, in my estimation, backed away from the invited error issue and explained for us why it's not problematic here. So I would ask that the court agree. Since I saw your earlier appearance, you pointed out that the standard, the relevant standard for dangerousness in 3553 is somewhat different than the one in 1B, whatever it was that the court applied. So as I see it, it is that, and now we're talking about the probability that there would be a different outcome. The 3553A2C allows the court to consider, quote, the need for the sentence imposed to protect the public from further crimes of the defendant. And I think that it blew 20 on your brief, you more or less admitted, I think maybe since you said so, that that's essentially equivalent to the danger to the community consideration that the judge actually applied. And among the things, as I recall, the judge said were that Long had commissioned killings for revenge and done so when he was wheelchair bound, maybe again, even when he was in jail, I don't recall exactly. And that for those reasons, his release would be a danger to the public that he was still harbored and showed himself capable of doing these things. If that's true, is there any way that one could overcome that in a 3553 balancing? Your Honor, I see my time is- You may answer. Thank you, Your Honor. Well, I think the point we were making in our brief is not that the two inquiries are the same, just that the court is not prohibited from considering public safety under the 3553A factors. And I think even if you assume that they are similar, there are a wide range of factors that the court would have to consider and balance and then articulate reasons for why one outweighs another. For example, there is the need to provide just punishment. So for example, as was the case in the Douglas order, the district court realized that the psychological stress of being incarcerated during the COVID-19 pandemic would heighten the level of punishment beyond what was just. There's also the sentences available. So for example, a term of supervised release or a term of home confinement, there's also sentence disparities. And these are all, and this is the point of the argument that on the procedural side, which is that, or a substantive as Judge Millett pointed out, that the inquiry did not occur here. The district court applied the wrong standard altogether because it felt bound by an inapplicable policy statement. And in essence, the court applied the one factor that it couldn't apply as determinative. You mentioned a limited remand. What were you thinking of? I mean, I understand it's not for resentencing. The sentence has been imposed. So it's only for compassionate release. So is that, when you were talking about limited, were you talking about limited to the compassionate release question or a subset of the issues in compassionate release? Your Honor, we think the proper course of action here is to vacate and just remand altogether on narrow legal grounds. Just as the courts did in Booker, Gunn, McGee, and now Shikambi. But to address the question there was, the hypothetical was assuming that this court would be apprehensive about the potential for harmless error or prejudice. And I think what I was referring to is that in Melina Martinez, as well in Chavez Mesa, the Supreme Court explained that when there's some concern about this harmless error counterfactual inquiry, one option for the court is to send it back down for the district court to determine in the first instance, whether a different sentence would have occurred absent the plain error. And I think that's available to this court. Do you have any further questions? Yeah. All right, thank you. Mr. Talai, you were appointed by this court to represent Mr. Long in this case. And the court is grateful for your excellent assistance in the matter. The case is submitted. Yes, indeed. Thank you.
judges: Millett, Pillard, Ginsburg